**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**DEAMORE ANTHONY TYRONE MAJORS**

    **Plaintiff,**

**vs.**                               **Case No. 3:19-cv-05051-MCR-MAF**

**WARDEN, WALKER CLEMMONS,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff, Deamore Anthony Tyrone Majors, an inmate proceeding *pro se* and *in forma pauperis*, initiated this civil rights action in December 2019 and was granted leave to proceed *in forma pauperis*. ECF No. 1, 7. His amended complaint was served on Defendant, Walker Clemmons, the warden of Santa Rosa Correctional Institution. ECF No. 22. This cause is presently before the Court upon Defendant's Motion to Dismiss for failure to state a claim and failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA") 1997e(a). ECF No. 37.

After careful review of the pleadings in this matter, for the reasons stated below, Defendant's Motion to Dismiss should be granted and the instant case dismissed.

## I. Allegations of the Amended Complaint, ECF No. 26

Plaintiff alleges that Defendant failed to protect him because he and his subordinates continuously place Plaintiff in imminent danger of physical and sexual assault. ECF No. 26, p. 5. Plaintiff, who is openly gay, has a housing classification of "close management," which he claims is an indefinite confinement status. Id. According to Plaintiff, his sexual orientation makes him a vulnerable target for attacks by fellow inmates. Id.

Plaintiff claims that Defendant and prison officials keep trying to house gang members and homophobic inmates inside his cell. Id. According to Plaintiff, prison gangs have a rule that members must assault or kill their homosexual cellmate. Id. Plaintiff alleges that because he is in 24-hour confinement, he would not be able to escape if he was housed with a gang member or homophobic inmate. Id. Plaintiff claims that he warned the Defendant by filing inmate request forms, grievances, and reports of threats by inmates. Id., p. 8. Plaintiff maintains that his applications for protective custody have been ignored; and, during protective management[1] hearings, officials told him that he would not be granted protection because he was charged with battery on a law enforcement official. Id., p. 9. Plaintiff also

---

[1] Protective management is "a special management status for the protection of inmates from other inmates in an environment as representative of that of the general population as is safely possible." Fla. Admin. Code R. 33-602.221(1)(j).

alleges that an official told him, once the pending protective management status was lifted, an inmate would be placed in his cell to "beat [him] bloody." Id.

Plaintiff claims that he received documented threats from "would be cellmates who refused to enter the cell" because he is gay. Id., p. 6. On September 10, 2019, officials placed E. Stone, an inmate, into Plaintiff's cell despite Stone's protests. Id. Stone threatened to beat Plaintiff to death once the cuffs were removed. Id. However, officials removed Stone and gave him a disciplinary report for his threats. Id. Then, on November 19, 2019, officials attempted to place Inmate Mobley in Plaintiff's cell with a similar result. Id. Again, officials removed Mobley and gave him a disciplinary report for his threats. Id.

On February 17, 2020, officials brought an unnamed inmate to be housed with Plaintiff; however, the inmate refused to enter the cell. Id., p. 7. Officers put the inmate in the shower and sought the assistance of Sergeant Butler to get the inmate, against his will, into Plaintiff's cell. Id. Plaintiff claims that he told Sergeant Butler he was concerned the inmate would attack him, but Butler placed the inmate is cell anyway. Id. Plaintiff claims that he also was handcuffed at the time. Id. Once the officer removed the inmate's cuffs, he repeatedly punched Plaintiff in the face and head. Id. Officers used

chemical agents to stop the inmate from assaulting Plaintiff and gave the inmate a disciplinary report. Id.

According to Plaintiff, the Defendant is responsible for failure to protect because he failed to implement a policy or procedure to prevent the assault and failed to authorize a protective custody status, which amounts to deliberate indifference to a substantial risk of serious harm in violation of the Eighth Amendment. Id., pp. 8, 10. Plaintiff raised no claims against any other prison official.

Plaintiff seeks declaratory and injunctive relief, specifically, a declaration that Defendant violated Plaintiff's constitutional rights and asks the Court to order Defendant to recommend Plaintiff for protective management status, a transfer to a Florida state penitentiary, and a requirement that all possible cellmates be screened for gang affiliation and homophobia. Id., p. 12.

## II.  Standard of Review

The issue on whether a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556; see also Wilborn v. Jones, 761 F. App'x 908, 910 (11th Cir. 2019). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 556). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

The pleading standard is not heightened, but flexible, in line with Fed. R. Civ. P. 8 to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). *Pro se* complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Nevertheless, a complaint must provide sufficient notice of the claim

and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people." Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005) (quoted in Twombly, 550 U.S. at 558).

One additional principle warrants highlighting: a motion to dismiss does not test the truth of a complaint's factual allegations. As noted above, factual allegations, though not legal conclusions, must be "accepted as true," Ashcroft, 556 U.S. at 678 even when they are "doubtful in fact." Twombly, 550 U.S. at 555. "Instead, it remains true, after Twombly and Iqbal as before, that 'federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.'" Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168-69 (1993) (quoted in Yawn v. Sec'y of Dep't of Corr., No. 5:13cv228-RH/EMT, 2017 U.S. Dist. LEXIS 96642, 2017 WL 2691423, at *1 (N.D. Fla. June 21, 2017)).

The issue of whether a prisoner failed "to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Such a "defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." Bryant, 530 F.3d at 1374.

Ruling on a "motion to dismiss for failure to exhaust administrative remedies is a two-step process." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (citation omitted). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." Id. (citing to Bryant, 530 F.3d at 1373-74).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373-74, 1376). The burden of proof for evaluating an exhaustion defense rests with the Defendant. Jones v. Bock, 549 U.S. 199 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Turner, 541 F.3d at 1082-83.

### III. Defendant's Motion to Dismiss, ECF No. 37

Defendant asserts that Plaintiff fails to state a claim as a matter of law for the incidents that occurred in September and November with Inmates

Stone and Mobley, respectively, the inmates who refused to be housed with Plaintiff and made threats against him. ECF No. 37. However, as admitted by Plaintiff, prison officials removed the inmates before any assault occurred and they were issued disciplinary reports. Id., p. 4. Therefore, according to Defendant, these incidents do not rise to the level of a constitutional violation. Id.

Defendant also maintains that Plaintiff failed to exhaust his administrative remedies, as required under the PLRA, for the incident that occurred on February 17, 2020. Id., p. 4-6. According to Defendant, because Plaintiff initiated this action on December 23, 2019, Plaintiff could not have possibly exhausted his administrative remedies on an incident that had not yet occurred. Id., p. 5. Thus, as a matter of law, Defendant claims he is entitled to dismissal of Plaintiff's amended complaint. Id., p. 7.

## IV. Plaintiff's Responses, ECF No. 59 and 67

Plaintiff filed a "Declaration," ECF No. 59, which the Court construed as a Second Amended Response. ECF No. 68. He also filed a "Motion Pointing Out This Court[']s Error," ECF No. 67, which the Court construed as a response to the Court's order seeking clarification. Both are considered here. Id. Plaintiff's "motion" asks the Court to consider all of his "declaration" filed as ECF No. 59. The Court does so here.

Plaintiff maintains that he exhausted his administrative remedies for the February 17 incident and claims he does not have a copy of the grievance because he submitted his only copy of Grievance Appeal Log # 20-6-09240 to the Court as an exhibit to his initial "opposition." ECF No. 59. In further support, he provides the emergency room report outlining the injuries he sustained from the February assault. Id., p. 16-17. The Court takes notice of Plaintiff's exhibit attached to his "opposition" in ECF No. 42, p. 11-12. Plaintiff's appeal describes the incidents of September 10 and November 19. Id. However, Plaintiff's appeal is dated March 12, 2020; and the prison's response is dated March 23. Id.

Plaintiff repeats his claims that he is vulnerable because of his sexual orientation, that he was assaulted on February 17, that he was threatened on September 10 and November 19, and that prison officials have intervened. ECF No. 59, pp. 1-5, 7. He reiterates his request for relief to be transferred to a Florida state penitentiary "where all close management inmates are housed alone." Id., p. 6.

V. **Discussion**

A. Failure to State a Claim

"A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the

official does not respond reasonably to the risk." Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (emphasis and internal quotation marks omitted); Farmer v. Brennan, 511 U.S. 825, 828 (1994). "To prevail on such a claim brought under § 1983, the plaintiff must show: (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation." Townsend v. Jefferson Cty., 601 F.3d 1152, 1158 (11th Cir. 2010).

In this case, Plaintiff's allegations do not state a failure to protect claim because he has not alleged any facts to show that he faces a substantial risk of serious harm in his housing unit. As explained previously, although Plaintiff alleges that when prison officials brought other inmates to his cell for housing and those inmates made threats against him, he admits that the officials did not permit the inmates to be housed with Plaintiff and instead removed them and issued disciplinary reports for their conduct. From his own account, Plaintiff is in "close management." He is not currently housed with the general population. Close Management is "the confinement of an inmate apart from the general population, for reasons of security or the order and effective management of the institution, where the inmate, through his or her behavior, has demonstrated an inability to live in the general population without

abusing the rights and privileges of others." Fla. Admin. Code r. 33-601.800. It is "the most restrictive single cell housing level of all the close management status designations." Fla. Admin. Code r. 33-601.800(2)(a)(1). It is "restrictive cell housing, which may or may not be restricted to single cell housing." Fla. Admin. Code r. 33-601.800(2)(b). Plaintiff presents no facts showing that this housing assignment is insufficient.

For similar reasons, because Plaintiff did not complain about any other risk of harm to him other than that there is a risk of harm if he shares a cell with another inmate who has a gang affiliation or is homophobic, Plaintiff has failed to allege any facts which would give Defendant subjective knowledge that Plaintiff faced a serious risk of harm. *See Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013) ("[d]eliberate indifference requires the following: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence"). Defendant cannot have a subjective knowledge of a risk that does not exist or one that is purely speculative.

Regardless, even assuming Plaintiff could show both a substantial risk of harm and subjective knowledge by Defendant, Plaintiff's failure to protect claim would still fail because Plaintiff's allegations show that prison officials acted reasonably. "[P]rison officials who actually knew of a substantial risk

to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 619-20 (11th Cir. 2007) (citing Farmer, 511 U.S. at 844). Accordingly, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id. (citing Farmer at 845). Based on Plaintiff's factual allegations, prison officials took reasonable steps to protect him during the incidents which occurred on September 10 and November 19. When inmates Stone and Mobley made threats against Plaintiff, prison officials removed them and issued disciplinary reports against them. ECF No. 26, p. 6. Plaintiff further asserted in his response that prison officials have intervened on his behalf. ECF No. 59.

To the extent that Plaintiff would attempt to reiterate claims in his response that Defendant failed to address in the motion to dismiss the threats made by prison officials, such claims are otherwise unsustainable. Derogatory, demeaning, profane, threatening, or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation. Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989); see also McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts . . . resulting in an inmate being subjected

to nothing more than threats and verbal taunts do not violate the Eighth Amendment.").

For the reasons stated, Plaintiff fails to state a claim for the incidents which occurred on September 10 and November 19.

## B. Failure to Exhaust Administrative Remedies

The PLRA mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement of § 1997e(a) is mandatory, and courts do not have "discretion to waive the exhaustion requirement." Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998). Exhaustion promotes efficiency and permits an agency "to correct its own mistakes" prior to being "haled into federal court." Woodford v. Ngo, 548 U.S. 81, 89 (2006). To discourage disregard of an agency's procedures and improve the quality of prisoner suits, the Supreme Court of the United States concluded that prisoners must properly exhaust a prison system's grievance process. Woodford, 548 U.S. at 90-91 (holding that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing

some orderly structure on the course of its proceedings"). Thus, prison officials must have "time and opportunity to address complaints internally before allowing the initiation of a federal case." 548 U.S. at 93 (citing Porter v. Nussle, 534 U.S. 516 (2002)).

Here, Defendant has supported his exhaustion defense as to Plaintiff's allegations. Plaintiff could not have exhausted his claim regarding the incident on February 17, because the incident occurred *after* the initiation of this suit. He is required by law to exhaust his administrative remedies *before* initiating a Section 1983 action not after filing the complaint in federal court. Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998). See also Johnson v. Jones, 340 F.3d 624 (8th Cir. 2003) ("In considering motions to dismiss for failure to exhaust under section 1997e(a), the district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred. If exhaustion was not completed at the time of filing, dismissal is mandatory."). Similarly, Plaintiff filed his grievance appeal of the September 10 and November 19 incidents in March 2020, months after he initiated this action.

The Court is not unsympathetic to Plaintiff's claims. In fact, the Court accepts his allegations as true at this juncture. However, Plaintiff is mistaken that continuing with the grievance process during the pendency of his

Section 1983 proceeding satisfies the exhaustion requirement. In short, Plaintiff did not give Defendant opportunity to address his complaints before seeking relief from this Court. The PLRA requires him to complete the process before initiating suit.

For the reasons stated, Plaintiff failed to exhaust his administrative remedies for the incident which occurred on February 17. Accordingly, because Plaintiff failed to exhaust his administrative remedies prior to the initiation of this lawsuit, dismissal is required.

### C. Request for Injunctive Relief

It also bears noting that the even if Plaintiff had sufficiently stated a claim or had exhausted his administrative remedies, he is not automatically entitled to the injunctive relief he seeks. This Court should be hesitant to interfere with the administrative processes of a prison. "Granting the injunction would require the federal courts to interfere in the administration of the jail and take over the management or treatment of a single inmate." Brown v. Anglin, 2016 U.S. Dist. LEXIS 158113, 2016 WL 6803133, at *2 (N.D. Fla. June 27, 2016), report and recommendation adopted sub nom. Brown v. Holland, 2016 U.S. Dist. LEXIS 158110, 2016 WL 6780319 (N.D. Fla. Nov. 15, 2016). "[C]ourts are ill-equipped to deal with" the complexities of prison administration. *Lawson v. Singletary*, 85 F.3d 502 (11th Cir. 1996).

Furthermore, it is well-settled that inmates do not have a constitutional right against being transferred to another institution, have no right to incarceration in a prison of their choice, and are not entitled to any prisoner- or status classification. Smith v. Crews, 738 F. App'x 981, 984 (11th Cir. 2018) citing Meachum v. Fano, 427 U.S. 215, 223-24 (1976); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Moody v. Daggett, 429 U.S. 78, 88 (1976). In essence, granting the relief requested by Plaintiff would provide the inmate with the means within which to dictate prison housing assignments. Prison assignments are a function wholly within the discretion of prison authorities. Olim, 461 U.S. at 245.

Most importantly, in order for Plaintiff to be entitled to a preliminary injunction, he must show: (1) a substantial likelihood of success on the merits; (2) that the order is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm that the order would cause to the non-movant; and (4) that the order would not be adverse to the public interest. DeYoung v. Owens, 646 F.3d 1319, 1324 (11th Cir. 2011). A preliminary injunction is considered an extraordinary and drastic remedy and, as such, is not granted unless Plaintiff can clearly satisfy the burden of persuasion as to each of the four prerequisites. Id.

In this case, Plaintiff has not shown that he is entitled to a preliminary injunction because he has not shown that he will be successful on the merits and further, for the reasons set forth above, has not shown that such an injunction is necessary to prevent an irreparable harm.

**VI. Conclusion and Recommendation**

It is respectfully RECOMMENDED that Defendant's Motion to Dismiss for failure to state a claim and failure to exhaust administrative remedies pursuant to 28 U.S.C. § 1997(e) and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), ECF No. 37, be GRANTED and Plaintiff's request for injunctive relief be DENIED. It is further recommended that the Order adopting this Report and Recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

IN CHAMBERS at Tallahassee, Florida, on August 20, 2020.

                                          **/s/ Martin A. Fitzpatrick**
                                          **MARTIN A. FITZPATRICK**
                                          **UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being

served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).